UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| BECKY KARIUKI and DIXIE KARIUKI, | Case No. 2:14-CV-1118 JCM (CWH) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| SHAC, LLC, et al., | |
| Defendant(s). | |

Presently before the court is a motion for summary judgment filed by defendants VIP Valet Parking LLC ("VIP"), Paul Thompson, and Danielle Thompson (collectively, as "defendants"). (ECF No. 25). Plaintiffs Becky Kariuki and Dixie Kariuki (collectively, as "plaintiffs") filed a response. (ECF No. 28).

**I.      Background**

Plaintiffs filed a complaint against Shac, LLC, Shac Mt. LLC, VIP, Paul Thompson, Danielle Thompson, John Lee, Peter Feinstein, David Talla, and Misty De Libertis (all doing business as Sapphire Gentleman's Club). The instant motion before the court is a motion for summary judgment filed by VIP, Paul Thompson, and Danielle Thompson.

This action centers around allegations that all named defendants failed to properly compensate plaintiffs with minimum wages and overtime wages as required under the Fair Labor Standards Act ("FLSA") and Nevada law. Plaintiffs also allege a claim of retaliation in violation of the FLSA and Nevada Constitution.

Other named defendants, collectively doing business as Sapphire Gentleman's Club ("Sapphire"), employed plaintiffs and defendants as independent contractors. (ECF No. 25). Defendants were hired to perform valet services for Sapphire on or about December 13, 2002.

**James C. Mahan**
**U.S. District Judge**

(ECF No. 25). In July 2010 and December 2011, plaintiffs were hired as bathroom attendants and employed in this capacity until their last day of work on May 12, 2014. (ECF No. 28). Plaintiffs allege that they worked six to seven nights a week for a total of approximately forty-two (42) hours per week for the duration of their employment. (ECF No. 12).

As part of plaintiffs' duties as bathroom attendants, they worked in the women's restrooms of Sapphire. (ECF No. 28). Plaintiffs allege that they alternated between the entertainer dressing rooms and the showroom restroom for customers at the direction of defendant Danielle Thompson. (ECF No. 28). Plaintiffs received no compensation other than tips from customers. (ECF No. 12). Plaintiffs allege that Paul and Danielle Thompson, under the umbrella of VIP, would provide typical refreshing supplies, food, candy, and curling irons for customers using the restrooms. (ECF No. 28). Plaintiffs were permitted, but not required to, purchase and provide minimal toiletries such as hair spray for defendants' customers. (ECF No. 28).

On November 18, 2010, defendant Paul Thompson began monitoring the conduct of plaintiffs and reporting the status of their work to Sapphire's management. (ECF No. 25). Plaintiffs assert defendant Paul Thompson, with the knowledge and permission of Sapphire's general management, required plaintiffs to pay a $500 fee per week out of their tips. (ECF No. 28). By contrast, defendant Paul Thompson asserts that he at no time collected fees from plaintiffs, instead, stating that "[p]laintiff's [*sic*] began to pay VIP . . . $500 per week to act as independent [c]ontractors in charge of the women's bathroom."[1] (ECF No. 28 at 7).

Plaintiff Becky Kariuki alleges defendant Danielle Thompson threatened to fire her and Dixie Kariuki on May 11, 2014. (ECF No. 28). She further asserts that after this threat, she received a text message from Paul Thompson instructing the sisters not to come to work on May 12, 2014. (ECF No. 28). Following the text message, Danielle Thompson terminated plaintiffs' employment and gave them a trespass warning, with the knowledge and permission of Sapphire's management. (ECF No. 28).

---

[1] Defendants characterize the actions of VIP Valet Parking Services, LLC as "act[ing] as independent Contractors [*sic*] in charge of the women's bathroom." (ECF No. 28 at 7). However, defendants characterize their actions in the men's restroom as "management of the men's restroom." (ECF No. 28 at 7).

**James C. Mahan**
**U.S. District Judge**

- 2 -

In the instant complaint, plaintiffs specifically allege: (1) defendants violated 29 U.S.C. §§ 206 and 207 for failure to pay plaintiffs minimum wages for the time they worked and overtime hourly wages for time they worked in excess of forty (40) hours per week; (2) defendants violated Article 15, Section 16 of the Nevada Constitution for a failure to pay plaintiffs minimum wages for the time they worked; (3) defendants failed to pay plaintiffs a minimum wage pursuant to NRS 608.250; (4) defendants violated NRS 608.018 for a failure to pay plaintiffs one and one-half their regular wages for all hours worked in excess of forty (40) hours per week defendants; (5) defendants owe plaintiffs unpaid wages under NRS 608.050 that were due at the time of their employment separation; and (6) a retaliation claim against defendants under 29 U.S.C. § 215(a)(4) and Article 15, Section 16, subpart (B) of the Nevada Constitution for terminating them because they complained to defendants.  (ECF No. 12).

In the instant motion, defendants VIP, Paul Thompson, and Danielle Thompson move for summary judgment on all of plaintiffs' claims.  (ECF No. 25).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine

James C. Mahan
U.S. District Judge

- 3 -

1  issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests.,*
2  *Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

3  By contrast, when the non-moving party bears the burden of proving the claim or defense,
4  the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
5  element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed
6  to make a showing sufficient to establish an element essential to that party's case on which that
7  party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving
8  party fails to meet its initial burden, summary judgment must be denied and the court need not
9  consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–
10 60 (1970).

11 If the moving party satisfies its initial burden, the burden then shifts to the opposing party
12 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
13 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the
14 opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient
15 that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
16 versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
17 631 (9th Cir. 1987).

18 In other words, the nonmoving party cannot avoid summary judgment by relying solely on
19 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,
20 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
21 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
22 for trial. *See Celotex*, 477 U.S. at 324.

23 At summary judgment, a court's function is not to weigh the evidence and determine the
24 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*,
25 *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all
26 justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the
27 nonmoving party is merely colorable or is not significantly probative, summary judgment may be
28 granted. *See id.* at 249–50.

**James C. Mahan**
**U.S. District Judge**

### III. Legal Discussion

Plaintiffs' claims are predicated on the existence of an employer/employee relationship. Accordingly, as an initial matter, the court will undergo an analysis of whether plaintiffs and defendants had an employer/employee relationship under the FLSA.

#### A. Employer/Employee Relationship

Defendants contend that they are not, and at no time were, employers of plaintiffs. (ECF No. 25). Instead, defendants assert that plaintiffs were independent contractors of other named defendants in the action. (ECF No. 25). Defendants assert that defendant Danielle Thompson had no connection to VIP or plaintiffs in any capacity as an employer, and should therefore be granted summary judgment and attorney's fees for having to defend this frivolous action against her. (ECF No. 25).

Plaintiffs argue that all named defendants in the complaint were their employers and thus, liable under the FLSA. (ECF No. 12).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).

The definition of employer is to be construed broadly so as to effect the remedial nature of the FLSA. *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (quoting *Bonnette v. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983), *abrogated by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 539 (1985)).

To determine if someone is an employer under the FLSA, the court should engage in an economic realities test. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754–55 (9th Cir. 1979). Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert,* 180 F.3d at 1012 (internal quotation marks and citations omitted).

An employee may have more than one employer under the FLSA. 29 C.F.R. § 791.2(a). Under the FLSA, if there are multiple employers, the entities are termed "joint employers." *Id.*;

*see also Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).  When there are joint employers, "the inquiry must [also] focus on the economic reality of the particular relationship between . . . [employer] and the alleged joint employer." *Torres-Lopez*, 111 F.3d at 641.

A contractual label does not define the relationship between employers and employees, rather, the definition of the relationship is determined by the economic reality arising from the employment. *In re Swift Transp. Co. Inc.*, No. 15-70592, 2016 WL 4010054, at *6 (9th Cir. July 26, 2016) (citing *Driscoll Strawberry Assocs., Inc.*, 603 F.2d at 755).

The economic realities test has a set of factors to be considered in determining whether someone is an employer for purposes of the FLSA. *Driscoll Strawberry Assocs., Inc.*, 603 F.2d at 754.  The factors most commonly used by the U.S. Supreme Court and the Ninth Circuit are:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; and
>
> 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* at 754–55.  A holistic approach is taken to weighing these factors and the activities of both parties to determine whether an employee/employer relationship exists.  *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

### 1. The degree of the alleged employers' right to control the manner in which the work is to be performed

Plaintiffs' affidavits, which must be taken as true for summary judgment purposes, assert that defendants had substantial control over plaintiffs' work.  (ECF No. 28-1).  According to plaintiffs' affidavits, defendants had the power to control where plaintiffs worked their shifts and the power to fire them, which plaintiffs assert Danielle Thompson ultimately did.  (ECF No. 28-1).

Defendants contend that Paul Thompson merely monitored plaintiffs' conduct and reported it to Sapphire's management, while Danielle Thompson had no employer relationship with plaintiffs. (ECF No. 25).

Thus, the first factor illustrates a genuine issue of material fact when the facts are taken in the light most favorable to plaintiffs.

### 2. *The alleged employees' opportunity for profit or loss depending upon their managerial skill*

Analyzing the second factor of opportunity for loss or profit, plaintiffs' opportunity for profit appears to rely more on the skill of Sapphire and VIP bringing in clients than it does upon plaintiffs' own skills in handing towels and perfume to customers.

While not addressed by the parties, factor two weighs in favor of a finding that defendants were employers.

### 3. *The alleged employees' investment in equipment or materials required for their task, or their employment of helpers*

Plaintiffs' affidavit states that defendants would provide typical refreshing supplies, food, candy, curling irons, and collect weekly fees from plaintiffs' tips, while plaintiffs were permitted, but not required to, purchase and provide minimal toiletries for use by all defendants' customers. (ECF No. 28).

Defendants assert that they did not pay for materials or collect fees. (ECF No. 25).

Accordingly, a genuine dispute exists as to whether named defendants invested in equipment and materials for plaintiffs.

### 4. *Whether the service rendered requires a special skill*

It is undisputed that plaintiffs performed the basic skills of cleaning, providing customers with toiletries, and security functions such as reporting misconduct to security at Sapphire. (ECF Nos. 25, 28).

The lack of skilled work on the part of plaintiffs weighs in favor of finding defendants employers within the meaning of the FLSA. Despite the undisputed nature of this particular factor, whether defendants were in fact employers of plaintiffs remains a genuine dispute of material fact.

James C. Mahan
U.S. District Judge

### 5. *The degree of permanence of the working relationship*

As to the fifth factor, the employment of plaintiffs was permanent in nature because plaintiffs worked for three and four years, respectively. (ECF No. 28).

Once again, this factor weighs in favor of finding defendants employers under the economic realities test, even though this particular factor is not disputed.

### 6. *Whether the service rendered is an integral part of the alleged employers' business*

Finally, neither party addresses whether the services plaintiffs rendered as bathroom attendants were an integral part of defendants' business.

In light of the foregoing, genuine issues remain as to whether the defendants were employers within the meaning of the FLSA.

**B. FLSA Minimum wage**

The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, [minimum] wages." 29 U.S.C. § 206(a). The Nevada Supreme Court has "adopt[ed] the FLSA's 'economic realities' test for employment in the context of Nevada's minimum wage laws." *Terry v. Sapphire Gentleman's Club*, 336 P.3d 951, 958 (Nev. 2014).

Thus, the above analysis under the economic realities test for the FLSA applies to plaintiffs' state court minimum wage claims under Article 15, Section 16 of the Nevada Constitution and NRS 608.250. Without a determination of whether defendants were employers under the FLSA, summary judgment is inappropriate.

Accordingly, defendants' motion for summary judgment on the minimum wage claims under the FLSA and Nevada law will be denied.

**C. FLSA Overtime**

The FLSA requires that employers compensate their employees for work conducted in excess of a forty (40) hour workweek "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). As discussed above, a genuine issue of material fact exists as to whether defendants were employers within the meaning of the FLSA.

**James C. Mahan**
**U.S. District Judge**

- 8 -

Section 608.018 of the Nevada Revised Statutes states that "an employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works." Nev. Rev. Stat. § 608.018. The Nevada Supreme Court has ruled that NRS 608.018 has intended to track federal law since 2005. *See Csomos v. Venetian Casino Resort, LLC*, No. 55913, 2012 WL 642460, at *3 (Nev. Feb. 24, 2012). Nevada law, therefore, follows the same requirements as the FLSA for overtime compensation claims.

Without a determination of whether defendants were employers under the FLSA, summary judgment is inappropriate.

Accordingly, defendants' motion for summary judgment on the overtime claims under the FLSA and Nevada law will be denied.

**D.  FLSA Retaliation**

Title 29 U.S.C. § 215(a) provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a). Claims pursuant to this section require that:

> a plaintiff [] make a *prima facie* showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision [unrelated to the FLSA action]. The burden then shifts to the plaintiff to demonstrate that the proffered reason is [pretextual].

*Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

### *1.  Prima Facie Case*

As the first burden to proving a retaliation claim under the FLSA, plaintiffs must show participation in a protected activity under the FLSA. *See id.* The FLSA intends for protected activity to include filing a complaint, or instituting or causing to be instituted a proceeding under the FLSA, or testifying about such a proceeding. 29 U.S.C. § 215(a)(3). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable

James C. Mahan
U.S. District Judge

- 9 -

1 employer to understand it, in light of both content and context, as an assertion of rights protected
2 by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*,
3 563 U.S. 1, 14 (2011). The U.S. Supreme Court has found that both written and oral complaints
4 meet this standard and put the employer on notice. *Id.*

5 Even assuming, *arguendo*, that an employer/employee relationship existed under the
6 FLSA, plaintiffs do not meet their burden of proving a *prima facie* case. Here, plaintiffs did not
7 participate in a protected activity effecting the protection of the FLSA. Plaintiffs merely claim to
8 have made "[an] oral and/or written complaint to defendants regarding defendants' failure to pay
9 the plaintiffs minim wages for the work [they] performed." (ECF No. 12). Plaintiff Becky Kariuki
10 states in her declaration, in response to defendants' motion for summary judgment, that she and
11 her sister, Dixie, raised several complaints with fellow co-workers. (ECF No. 28-1).

12 Complaining to co-workers does not serve to put the employer on notice that the employee
13 is asserting rights protected by the FLSA and calling for their protection. *See Kasten*, 563 U.S. at
14 14 ("the phrase 'filed any complaint' contemplates some degree of formality, certainly to the point
15 where the recipient has been given fair notice that a grievance has been lodged and does, or should,
16 reasonably understand the matter as part of its business concerns"); *see also Lambert*, 180 F.3d at
17 1004 ("'any complaint' . . . extends to complaints made to employer"); *see also Williamson v. Gen.*
18 *Dynamics Corp.*, 208 F.3d 1144, 1152 (9th Cir. 2000). The evidence does not irrefutably
19 demonstrate that any complaint, verbal or written, was ever made to defendants in their capacity
20 as employers.

21 Under the Nevada Constitution "[a]n employer shall not discharge, reduce the
22 compensation of or otherwise discriminate against any employee for using any civil remedies to
23 enforce this section or otherwise asserting his or her rights under this section." Nev. Const. art.
24 XV, § 16(B). Plaintiffs' allege that they were fired before bringing the present civil remedy. Thus,
25 plaintiffs have not provided enough evidence to support their state claim for retaliation.

26 Accordingly, the court finds that the evidence does not irrefutably demonstrate that
27 plaintiffs participated in a protected activity under the FLSA. Plaintiffs failed to provide evidence
28

**James C. Mahan**
**U.S. District Judge**

to support their state retaliation claim as well.  As such, the court will grant defendants' motion for summary judgment as it relates to both the federal and state retaliation claims.

### IV.     Conclusion

Based on the foregoing, the court finds that a genuine issue exists as to whether defendants were employers within the meaning of the FLSA so as to preclude summary judgment on plaintiffs' minimum wage and overtime claims under the FLSA and Nevada law.  Thus, defendants' motion for summary judgment is denied as to these claims.  Further, the court finds that plaintiffs have failed to allege sufficient facts or provide evidence in support of their retaliation claims.  Therefore, defendants' motion for summary judgment is granted as to plaintiffs' FLSA and Nevada law retaliation claims.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motion for summary judgment submitted by defendants VIP, Paul Thompson, and Danielle Thompson (ECF No. 25) be, and the same hereby is, GRANTED IN PART and DENIED IN PART consistent with the foregoing.

DATED October 13, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**