MARK E. FERRARIO
Nevada Bar No. 1625
TAMI COWDEN
Nevada Bar No. 8994
ALAYNE OPIE
Nevada Bar No. 12623
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone:  (702) 792-3773
Fax:            (702) 792-9002
ferrariom@gtlaw.com
cowdent@gtlaw.com
opiea@gtlaw.com

*Defendants SHAC, LLC; SHAC MT, LLC;
Peter Feinstein; David M. Talla;
Misty De Libertis; and John Lee.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BECKY KARIUKI and DIXIE KARIUKI, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SHAC, LLC, SHAC MT, LLC, VIP VALET PARKING LLC, PAUL THOMPSON, DANIELLE THOMPSON, JOHN LEE, PETER FEINSTEIN, DAVID M. TALLA, and MISTY DE LIBERTIS, all d/b/a Sapphire Gentleman's Club<br><br>Defendants. | Case No.  2:14-cv-01118-JCM-CWH<br><br>**OPPOSITION TO PLAINTIFF'S FIFTH MOTION TO STAY CASE AND COUNTERMOTION TO DISMISS FOR FAILURE TO PROSECUTE** |

Defendants SHAC, LLC, SHAC MT, LLC, Peter Feinstein, David M. Talla, Misty De Libertis, and John Lee (the "SHAC Defendants") by and through their undersigned counsel, GREENBERG TRAURIG, LLP, hereby submits their **OPPOSITION TO PLAINTIFF'S FIFTH MOTION TO STAY CASE AND COUNTERMOTION TO DISMISS FOR FAILURE TO PROSECUTE.** This Court should deny the Plaintiffs' request to stay ("Motion") [Doc. 54] and dismiss this action in its entirety. Plaintiffs have *continuously* failed to be diligent in their

1  prosecution of this case.  The true reason Plaintiffs hope to gain an additional 45 days continuance
2  and a stay is so that, after nearly four years, they can finally get around to prosecuting their case.
3  Defendants have been burdened with having this case pending for years, and should not be put to
4  further delay.  As shown in the Motion in Limine filed by the SHAC Defendants on January 18,
5  2018 (Doc. 41[1]), Plaintiffs have willfully failed to prosecute this matter.  They are unprepared for
6  trial, have failed to pursue legitimate discovery, and will, most likely, be unable to present any
7  witnesses or exhibits into evidence.  Accordingly, granting the Motion merely delays the inevitable.
8  Accordingly, the Motion should be denied, and SHAC Defendants' Countermotion to Dismiss
9  ("Countermotion") granted.

   **1. STATEMENT OF RELEVANT FACTS**

11  This case was filed in July 8, 2014.  (Doc. 1).  An amended Complaint was filed in
12  September 2, 2014. (Doc. 12).  The parties agreed to a discovery plan, and a scheduling order was
13  entered.  (Doc. 15 and 16).  Initial disclosures were exchanged in November of 2014.[2]  The parties
14  engaged in settlement discussions, and in December 2014, stipulated to a stay of the proceedings
15  until February 9, 2015.  (Doc. 18).

16  On February 9, 2015, Plaintiffs' first counsel moved to withdraw.  (Doc. 19).  That motion
17  also requested a 90 day stay to allow Plaintiffs to obtain new counsel. Id.  However, before that
18  motion was heard, on February 23, 2015, Plaintiffs' second counsel substituted in as counsel of
19  record.  (Doc. 21).  Accordingly, the motion to withdraw and for stay was denied as moot.  (Doc.

---

[1] Said Motion was not decided before this matter was stayed.

[2] Plaintiffs' initial witness disclosures consisted of lists of more than 200, many without surnames, of persons described under the follow categories: "Sapphire Cocktail Severs/Bartenders/Guest"; "Sapphire Management"; "Men of Sapphire"; "Sapphire Security"; "Sapphire Office/Cage"; "Sapphire House Moms"; "Sapphire Porters/Maintenance/Grills" Sapphire Entertainers/Guests" and "VIP Valet Parking. Phone numbers were listed for approximately half of the person "identified." No explanation of the anticipated testimony of any of the witnesses was included. The list of witnesses did *not* include either of the Plaintiffs. ***See Ex. A*, Plaintiffs Compliance with FRCP 26(A) (sic).** Document disclosures consisted of copies of demand letters; a printout from the LVMPD entitled "Event Search"; a letter from the Dept. of Employment and Training stating its determination that Dixie Kariuki had not been engaged in covered employment when providing services at Sapphire; a list of dates and time periods from a "Note" app; a letter from the DOL acknowledging the filing of a claim by Becky Kariuki; some photographs; and copies of an exchange of texts between Becky and various persons. In one such text, Ms. B. Kariuki refers to "Sapphire Management" as a "third party neutral" for a discussion of a dispute between Ms. Thompson and Ms. Kariuki. *Id.* at 40.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

23).

Pursuant to the Scheduling Order, discovery was to close on May 23, 2015. (Doc. 16). In April, the SHAC Defendants propounded discovery to Plaintiffs. Plaintiffs failed to timely respond, despite receiving requested extensions of time. In July 2015, the parties jointly proposed a Pretrial Order which documented Plaintiffs' failure to conduct any discovery. (Doc 24, p. 10). In that document, Plaintiffs stated that "a pretrial conference is warranted pursuant to LR 16-2 and/or a settlement conference pursuant to LR 16.5." *Id.*

The matter languished without any activity until March 2016, when Defendants VIP Valet Parking LLC, Paul Thompson and Danielle Thompson (collectively, "VIP Defendants") filed a motion for summary judgment. (Doc. 25). This Court partially granted the motion, dismissing the claims for retaliation. (Doc. 32). The matter then further languished until March 2017, when Magistrate Hoffman required the parties to submit an amended Proposed Pretrial Order, to reflect that a jury trial had been requested. (Docs. 34, 35). The Amended Pretrial Order was entered on April 18, 2017. (Doc. 36). At this time, the SHAC Defendants attempted to engage in settlement negotiations. However, while Plaintiffs' counsel stated several times that he would consult with his clients, he never responded to any offers.

Here, the parties were to file pretrial disclosures *and objections* thereto by October 31, 2017. (Doc. 36). However, at no time prior to October 31, 2017 did Plaintiffs' counsel contact SHAC Defendants' counsel for a meet and confer to exchange proposed witness lists or exhibits, nor did Plaintiffs' counsel present any proposed witness list or exhibits. In the absence of such disclosures, and coupled with the Plaintiffs' failure to respond to discovery, the SHAC Defendants were unable to identify appropriate witnesses or exhibits on which it might rely at the time of trial. Presumably, the VIP Defendants were similarly hampered.

In December 2017, Plaintiffs' counsel requested that the parties stipulate to a settlement conference. The SHAC Defendants agreed, and the conference was set for January 22, 2018. (Doc. 37-39). On January 19, 2018, counsel for the SHAC Defendants requested a meet and confer with Plaintiffs' counsel regarding the Motion in Limine the SHAC Defendants intended to file. (Doc. 41). Shortly after that conference, Plaintiffs served their First Supplement to Initial Disclosures

1  ("Supplement"). **Ex. B,** Supplement. In that Supplement, Plaintiffs' list of witnesses was reduced to
2  eleven names. Neither of the Plaintiffs' names appear therein and only one Defendant, Danielle
3  Thompson, is listed. *Id.*

4  Of the ten remaining names:

5  • Three of the witnesses are first name only, with no contact information.

6  • Only four of names included a telephone number.

7  • Two of those, Marcia Perez and Kathy Sadri, had working numbers. Neither knew they had been
8    listed as a witness, nor any idea of what testimony they would be expected to give.

9  • Of the remaining two names with a telephone number, one number was disconnected, and the
10   other was for a business that did not recognize the witness' name.

11  In their document disclosures, Plaintiffs included all the documents they had previously
12  produced, in addition to copies of news and Internet articles referencing Sapphire Gentlemen's Club
13  dating back to 2004; notices of meetings and events at Sapphire; receipts from the restaurant; social
14  media advertising for Sapphire; advertising for the Sapphire Foundation for Prostate Cancer events;
15  agendas of unidentified meetings, dated from 2010 and 2012, and assorted flyers. The Supplement
16  was not filed, and does not identify either of the documents as trial exhibits.

17  On January 18, 2018. SHAC Defendants filed a motion in limine, laying out the details
18  above, and requesting that Plaintiffs be precluded from presenting evidence or witnesses at trial due
19  their failure to make required disclosures and to obey discovery rules. (Doc. 41).

20  The settlement conference was held January 22, 2017. (Doc. 37-39). No settlement was
21  reached. In the evening of that same day, Plaintiffs' counsel sent an email to SHAC Defendants'
22  counsel, stating:

23  Counsel, please advise if you will stipulate to a brief trial continuance to conduct
    discovery that Sapphire wants. Thank you.
24
**Ex. C,** Email dated January 22, 2018, Hatfield to Cowden, Opie, Ferrario and Santacroce. Rather
25  surprised at this suggestion that Sapphire had requested that discovery be reopened, the undersigned
26  replied:
27
    Sapphire has not required a trial continuance to conduct discovery.
28

**Ex. D,** Email dated January 23, 2018, Cowden to Hatfield and Santacroce. That email was sent at 9:42 am. *Id.* Just after 8 pm on the same day, Plaintiffs' counsel advised Defendants by email that he was filing a motion to withdraw as counsel, motion to stay, and motion to continue trial. **Ex. E,** Email dated January 23, 2018, Hatfield to Cowden, Opie, Ferrario and Santacroce.

In Plaintiffs' motions for a continuance and stay, the stated reason is the need to obtain new counsel; <u>no mention of any need for discovery is disclosed to the Court</u>. (Docs. 43-47). Plaintiffs clearly hope to gain a reboot of this case, and a second chance to prosecute it properly. Yet, at that juncture, Plaintiffs had had three and a half years to pursue their case. They chose not to do so.

Three days later, the Court granted Plaintiffs' motions, permitted Plaintiffs' second counsel to withdraw, continued the trial date and stayed the matter 90 days. (Doc. 49). To no surprise, Plaintiffs failed to obtain new counsel during the allotted timeframe and, thereafter, filed a third motion with the Court to extend the stay an additional 45 days, claiming "unforeseen economic hardship," and the request was granted. (Doc. 50 - 51). Again, Plaintiffs failed to obtain new counsel during the allotted timeframe and, thereafter, filed a fourth motion with the Court to extend the stay an additional thirty-five more days, claiming "unforeseen illness of an immediate family [member.]" (Doc. 52). On June 15, 2018, the Court granted the request, allowing Plaintiffs a fourth opportunity to obtain counsel. (Doc. 53). To no surprise, 35 days have passed and Plaintiffs have still not obtained counsel. Instead, Plaintiffs filed a fifth Motion, requesting an additional forty-five days stay, claiming a "death in the immediate family." (Doc. 54).

Plaintiffs' inaction at this juncture is inexcusable. Moreover, such request is highly prejudicial to SHAC Defendants. Time and time again, and for the past four years, Plaintiffs have proven they have no intention on actually litigating this matter; instead allowing this case to languish at the SHAC Defendants' expense. Moreover, an additional extension is a futile exercise. Plaintiffs have failed to conduct any meaningful discovery, have failed to prosecute this matter, and will be unable to present any witnesses and/or evidence at the time of trial in support of their case. Respectfully, SHAC Defendants request that this Honorable Court deny Plaintiffs' Motion and dismiss this action.

/ / /

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## II. LEGAL ARGUMENT

### A. The case is subject to dismissal for failure to prosecute and failure to comply with court rule.

Plaintiffs have an affirmative duty to prosecute their cases or face dismissal for failure to so do. *Coulson v. S. Nev. Movers*, 2016 U.S. Dist. LEXIS 182265, at *1 (D. Nev. Dec. 2, 2016). Pursuant to FRCP 41(b), defendants may move to dismiss an action where the plaintiff "fails to prosecute or to comply with these rules or a court order…." Fed. R. Civ. P. 41(b). Failure to prosecute on the part of plaintiff's counsel is attributable to the plaintiff, and therefore, dismissal of such claims is just and appropriate. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962).

Broad discretion is given to courts to dismiss actions for want of diligent prosecution (*see Schmidt v. Wallenius Line*, 455 F.2d 1088 (9th Cir. 1972)), as such dismissal is necessary for the efficient and orderly administration of the trial courts:

> "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts….[W]hen circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting."

*Link*, 370 U.S. at 629-630, 633. "[D]istrict courts cannot function efficiently unless they can effectively require compliance with reasonable rules. Absence of meaningful power to require that compliance would make for disorder and preclude effective judicial administration at the trial court level." *Tobin v. Granite Gaming Grp. II, LLC*, 2008 U.S. Dist. LEXIS 118251, at *42 (D. Nev. Feb. 28, 2008), quoting *Chism v. Nat'l Heritage Life Ins. Co.*, 637 F.2d 1328, 1332 (9th Cir. 1981). Here, for Plaintiffs' failure to comply with the Federal Rules of Civil Procedure ("Rule") and in the interest of this Court, Plaintiffs' claims should be dismissed.

#### i. Plaintiffs failed to prosecute.

Becky Kariuki and Dixie Kariuki, as Plaintiffs in this matter, bear the burden of establishing that they are entitled to relief for each of their claims. *See Stickler v. Quilici,* 98 Nev. 595, 597, 655 P.2d 527, 528 (1982) (explaining that the burden is on the plaintiff to prove every fact essential to establishing a cause of action). Yet, here, short of producing 71 pages of unintelligible documents,

and a laundry list of proposed witnesses which does not comply with Rule 26, Plaintiffs have conducted absolutely no discovery in an attempt to prove up their claims. Indeed, Plaintiffs have not propounded even one interrogatory on the SAHC Defendants, noticed a single deposition, subpoenaed records, etc. Plaintiffs have taken no action to prosecute their case, demonstrating a lack of good faith participation in these proceedings. *See Dela Rose v. Trainor,* 2016 WL 757104, *1 (D. Nev. Feb. 18, 2016). What is more, Plaintiffs have refused to respond to multiple sets of written discovery propounded by the SHAC Defendants in mid-2015. Taking into account the many stays ordered in this matter, this case has been pending for over 43 months. Plaintiffs have had ample opportunity to prosecute their claims, but have allowed this case to sit stagnant, all the while denying the SHAC Defendants access to information it may need in support of its defenses. Here, Plaintiffs' lack of diligence is significant and dismissal of Plaintiffs' case is necessary for the efficient and orderly administration of this Court. *See e.g. Mirch v. Giovanni*, 2015 Wl 4611966, *1 (July 31, 2015) (affirming district court's finding that appellate lacked diligence in prosecuting his case during the 35 months in which it was pending).

### ii. Plaintiffs failed to comply with court rules.

At the outset of this case, Plaintiffs were required to produce the name and contact number of all individuals likely to have discoverable information – along with the subject matter of said information – that Plaintiffs may use to support their claims, unless the use would be solely for impeachment. Rule 26(a)(1)(A)(1). Of course, Plaintiffs were obligated to supplement this list in accordance with the Rules. On November 3, 2014, Plaintiffs produced a document titled, "Plaintiffs' Compliance with Fed. R. Civ. P. 26(A)." Ex A. Attached to the pleading is a ten-page list of names, some with telephone numbers, but most without, which omits any subject matter on which the proposed witnesses may testify. Indeed, the list is so evasive, Plaintiffs often resort to identifying witnesses by nicknames such as "Hazel" and "Gucci." *Id.* But most concerning is Plaintiffs' failure to identify themselves as witnesses to this case. Without Plaintiffs' testimony, *there is no case or controversy* as Plaintiffs are unable to prove their claims.

The witness list is only one example of Plaintiffs' lackadaisical attitude toward, and total disregard for, the Rules and their obligations to properly pursue their claims. Under these extreme

circumstances, the SHAC Defendants submit that sanctions are warranted. Pursuant to Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a), as the case is here, the party is not allowed to use that witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011) (noting the district court could have dismissed plaintiff's case for failure to comply with orders and its "bad faith misuse of the discovery process" when plaintiff disclosed 16 new witnesses on the eve of trial). Here, Plaintiffs' track records speak for itself. Their failure to timely and effectively supplement their Rule 26 witness list even once[3] over the course of 43 months or even identify themselves as testifying witnesses is not the result of harmless error, nor is it remotely justified. Instead, their failure is purely the byproduct of their lack of diligence and total disregard for the Rules.

### B. Should this matter proceed to trial, Plaintiffs are unable to prove their claims.

In the event the Court does not grant the SHAC Defendants' Countermotion, a trial in this matter is futile. Each one of Plaintiffs' claims is dependent upon a determination that Plaintiffs and the SHAC Defendants had an employee/employer relationship. Without an employee/employer relationship, liability will not stand. *See* NRS § 608.018 (1) (an employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works:…); NRS § 608.040 (1) (a) (if an employer fails to pay: within three days after the wages or compensation of a discharged employee becomes due…); NRS § 608.250 (…the Labor Commission shall, in accordance with federal law, establish by regulation the minimum wage which may be paid to employees…); *Mr. Donald Klasic*, 1994 Nev. Op. Atty. Gen. 88, No. 94-15 ("The determinative question is whether there is a sufficient relationship between the intern and the organization to establish the organization as an "employer" and the intern as an "employee."); *See* 29 U.S.C. §§ 206-207. Moreover, the burden to prove the existence of an employee/employer relationship is

---

[3] Additionally, Plaintiffs failed to produce pre-trial list of witnesses and documents.

Plaintiffs'. *See Stickler* 98 Nev. at 597.

Yet, here, Plaintiffs have not properly disclosed <u>any</u> witnesses to testify to the existence of an employee/employer relationship and the minimal documentation produced by Plaintiffs (which Plaintiffs will be unable to authenticate without a proper witness) does not support the conclusion that SHAC Defendants are Plaintiffs' employers. Indeed, Plaintiffs did not timely identify themselves as testifying witnesses, nor did they name a single witness likely to have discoverable information on the subject. Under these circumstances, Plaintiffs must not be permitted to take the stand to testify on their own behalf, especially when Plaintiffs refused to respond to written discovery, and blind-side the SHAC Defendants with self-serving testimony that the SHAC Defendants have not had the opportunity to pressure test or ability to verify. Here, the Rules and equity support a decision to preclude Plaintiffs from blind-siding the SHAC Defendants. Plaintiffs have not timely or appropriately designated a single witness to testify to the existence of an employee/employer relationship and with zero ability to prove the same, all of Plaintiffs' claims fail. Accordingly, a trial on the merits would be futile.

Furthermore, a trial would be futile as Plaintiffs have no demonstrable damages. In their initial Rule 26(f) disclosure, Plaintiffs set forth their insufficient computation of damages,

> The plaintiff makes claims for unpaid minimum wages and overtime wages under federal and state law for all hours she was required to work as a bathroom attendant in defendants' Las Vegas strip club. Plaintiff was paid no wages for any time she worked for defendants and rather only worked for tips from defendants' customers. Plaintiff also makes a claim under federal law to recoup her share of $500.00 each week that was paid or "kicked back" to defendants from the plaintiffs' pooled tip money.

Included in the only documents Plaintiffs produced in 2014 are letters to SHAC, LLC, wherein Becky Kariuki and Dixie Kariuki demand $103,000.00 and $60,490.00, respectively, in damages. However, despite the SHAC Defendants' best efforts, how Plaintiffs arrived at these figures is still unknown. Documentation supporting Plaintiffs' claimed damages has never been produced in this case, Plaintiffs failed to timely respond to the SHAC Defendants' Rule 34 requests for supporting documentation, and Plaintiffs failed to timely respond to the SHAC Defendants' interrogatories and

describe the basis of their claimed damages. Plaintiffs refused to respond to the SHAC Defendants' many questions concerning Plaintiffs' unsubstantiated claims.

Plaintiffs have the burden of proving damages. *Frantz v. Johnson,* 116 Nev. 455, 469-70, 999 P.2d 351, 360 (2000). While Plaintiffs need not prove its damages with mathematical precision, they are required to establish a reasonable basis for ascertaining damages. *See Bader v. Cerri*, 96 Nev. 352, 609 P.2d 314 (1980). Here, Plaintiffs have not established a reasonable basis for claimed damages. At their own peril, Plaintiffs refused to respond to requests to substantiate damages. On the eve of trial, evidence supportive of Plaintiffs' claimed damages simply does not exist. Without a rational basis to prove damages, Plaintiffs have no claims.

### III. CONCLUSION

For the reasons addressed herein, SHAC Defendants respectfully request that the Court deny Plaintiffs' fifth request to stay this case and grant SHAC Defendants' Countermotion to Dismiss.

Dated this 18th day of July, 2018.
**GREENBERG TRAURIG, LLP**

*/s/ Alayne Opie*
MARK E. FERRARIO
Nevada Bar No. 1625
TAMI D. COWDEN
Nevada Bar No. 8994
ALAYNE M. OPIE
Nevada Bar No. 12623
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
*Attorneys for Defendants*
*SHAC, LLC; SHAC MT, LLC;*
*Peter Feinstein; David M. Talla;*
*Misty De Libertis; and John Lee.*

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

# CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July, 2018, a true and correct copy of the foregoing **Opposition to Plaintiff's Fifth Motion to Stay Case and Countermotion to Dismiss for Failure to Prosecute** was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

                                     */s/ Andrea Lee Rosehill*
                                   An employee of Greenberg Traurig, LLP

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002